Phylis E. WEGENG, Respondent,

v.

Ora H. FLOWERS, Appellant,

v.

Nan S. DAY, Respondent.

No. WD 39352.

Missouri Court of Appeals,
Western District.

April 5, 1988.

As Modified May 26, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 31, 1988.

Application to Transfer Dismissed
July 5, 1988.

returned a verdict in favor of Day on Flowers' claim.

Flowers contends the court erred in refusing to grant a continuance. Reversed and remanded.

In her petition, Wegeng alleged that she was a passenger in an automobile driven by Nan Day in September of 1985, when the Day automobile was struck in the rear by a pickup truck driven by Flowers. The petition was filed in March of 1986.

After the accident Wegeng was seen in the emergency room of the Ray County Hospital and later by Dr. Riley, her family physician. Dr. Riley diagnosed her condition as muscle sprain or strain when he found her neck muscles were pulled and swollen. He prescribed heat and whirlpool treatments together with pain medication and muscle relaxants. After seeing Dr. Riley, Wegeng continued her athletic endeavors on the softball field but switched to pitcher from a fielding position.

In addition to Dr. Riley, Wegeng saw Dr. Jordan, a chiropractor. She later had a CAT scan ordered by Dr. Riley, and he referred her to Dr. Lewis in Kansas City. Dr. Lewis sent her to Dr. Williams. Dr. Williams performed an EMG and gave her a cervical traction kit.

Dr. Lewis referred Wegeng to Dr. Fee on December 3, 1986, and on February 12, 1987, Dr. Fee performed an anterior-cervical fusion.

On September 4, 1986, the court set this case for trial on March 16, 1987. On March 5, 1987, the court took up a joint motion for continuance filed by Flowers and Day.[1] Flowers and Day contended that they did not know that Wegeng was to have surgery until the end of January. Their contention was that there would be insufficient time between the surgery on February 12 and the trial on March 16 in which to have Wegeng examined, for physicians to evaluate Wegeng's condition, and for the attorneys to consult with their physicians regarding their opinions.

Philip J. Adams, Jr., Watson, Ess, Marshall & Enggas, Kansas City, for appellant.

Michael E. McCausland, Sharon K. Weedin, Knipmeyer, McCann, Fish & Smith, Kansas City, for Day.

Farrell D. Hockemeier, Richmond, for Wegeng.

Before GAITAN, P.J., and TURNAGE and CLARK, JJ.

TURNAGE, Judge.

Phylis E. Wegeng filed suit for personal injuries against Ora Flowers as a result of an automobile accident. The jury returned a verdict in favor of Wegeng and against Flowers in the amount of $108,650. Flowers filed a third party petition against Nan Day for apportionment of fault. The jury

1. The motion complied with Rule 65.03. In any event no objection to the form of the motion was raised in the trial court and the ruling was on the merits of the motion.

On appeal, Flowers contends that from the time suit was filed until the end of January of 1987, this case was considered to be a routine soft-tissue injury to the neck case. It was not until they were advised by Wegeng's counsel that she was going to undergo a cervical fusion just over a month prior to trial that counsel for Flowers and Day were aware that this case presented something out of the ordinary and was not a routine soft-tissue injury case.

Flowers had Wegeng examined by a physician on February 5, 1987, but contended there was inadequate time between the surgery and the trial date to properly prepare to meet the substantial enlargement of Wegeng's claims.

After Flowers and Day presented their arguments on the motion for continuance, Wegeng's counsel reminded the court that the case had been set since September of 1986 and that he would be ready to try the case on March 16. He stated he would make his physicians available for deposition prior to trial. Day's counsel conceded that depositions probably could be taken prior to trial, but that sufficient time was not available to properly evaluate the opinion of the physician and to prepare to meet the substantial enlargement of Wegeng's claim.[2]

The court, in overruling the motion for continuance, stated that it had reserved three days for this case when it was set for trial on September 4, 1986. The court stated that it would like to accommodate Flowers and Day, but because the motion was opposed, the court would overrule the motion.

At trial, Dr. Fee testified that Wegeng was wearing a neck brace at that time to insure that her neck was not turned or extended to dislodge the graft of bone that had been tamped into the disc in Wegeng's neck. Dr. Fee said that she would be wearing the brace for about two and one-half months.

In *Overland Outdoor Advertising Co., Inc. v. Missouri State Highway Commis-*sion, 616 S.W.2d 563, 566[4] (Mo.App.1981), this court stated the familiar rule that considerable discretion is vested in the trial court in the matter of continuances, and on appeal, every intendment is in favor of the trial court's ruling. This court stated, however, that the facts in each case must be examined to determine if the ruling is arbitrary or abusive. *Id.*

In 17 C.J.S. *Continuances* § 4 p. 375 (1963), it is stated "that the basis for a continuance rests on the right of a party to a cause to try the cause on its merits with a view to obtaining justice; ...."

In this case, the only reason the court gave for the overruling of the continuance request was the fact that the case had been set since September of 1986 and the court had reserved three days for the trial. The court made no finding concerning whether or not the substantial change in Wegeng's condition and claim, which arose after the setting of the trial date, would interfere with the ability of Flowers and Day to obtain a fair trial. The main objection voiced by Wegeng's counsel to a continuance was the same—that the case had been set since September, and Wegeng was ready for trial. While counsel offered to make Wegeng's physicians available for depositions prior to trial, there was only slightly over a month between the surgery and trial date. Certainly, Flowers and Day were entitled not only to take depositions but to have time to consult with their own physicians and have their physicians examine Wegeng after the surgery.

It is significant that Wegeng never contended that a continuance would prejudice her ability to have a fair trial, nor did the court find any such prejudice to Wegeng. While this court appreciates the right and duty of the trial court to set and control its own docket, this right must be tempered by the primary duty of the court to provide to every party a fair trial.

Wegeng certainly knew that her condition changed after the case was set for trial and that her claim was substantially enlarged. Thus, the fact that the case had

---

2. At trial, Wegeng stated her special damages totaled $12,000.

already been set for trial is not a sufficient answer to the claim of Flowers and Day that they would not have sufficient time to properly evaluate the substantially enlarged claim in order to properly prepare for trial.

In *Simon v. S.S. Kresge Co.*, 103 S.W.2d 523, 528 (Mo.App.1937), the court held that a change in the plaintiff's claim which substantially enlarged the claim for damages was the proper subject for a continuance. This case was enlarged from a typical soft-tissue injury claim to a substantial claim involving special damages of $12,000. The enlargement of the claim was first made known to counsel for Flowers and Day in late January, prior to the March 16 trial date. With surgery only a few days over a month prior to trial, and allowing for recuperation by Wegeng, it cannot be said that Flowers and Day had sufficient time afterward to properly prepare for trial. This court finds that the court abused its discretion when it denied the request of Flowers and Day for a continuance.

■ Two other matters may arise on retrial. The first is the contention of Flowers that Wegeng did not prove facts that would authorize her to submit a verdict director based on MAI 17.16 (1981), commonly referred to as the rear-end collision doctrine instruction. In *Boresow v. Manzella*, 330 S.W.2d 827 (Mo.1959), the court implicitly held that the fact that the lead vehicle was stopped at the time of the collision did not remove the case from the rear-end collision doctrine. Here, Wegeng's evidence was that the Day vehicle was stopped at the time Flowers collided with the rear end of it. Flowers' evidence was that Day made a sudden stop without an adequate signal. Flowers contends that under *Doggendorf v. St. Louis Public Service Company*, 333 S.W.2d 302 (Mo.App. 1960), it was improper to submit the rear-end collision doctrine instruction. *Doggendorf* is distinguishable from this case because, there, the plaintiff was the driver of the lead vehicle. Here, the plaintiff, Wegeng, was a passenger in the lead vehicle. Day was the driver of the lead vehicle and was not a party to the claim brought by Wegeng. The only claim made by Wegeng was against Flowers. Thus, any negligence on the part of Day would not be applicable to the claim brought by Wegeng. The negligence of Day was relevant only to the claim brought by Flowers for apportionment of fault between Flowers and Day. The evidence presented by Wegeng against Flowers made a case under the rear-end collision doctrine, and the court properly submitted Wegeng's claim against Flowers by MAI 17.16.

■ After the verdict, Flowers requested the court to give him credit on the judgment for $5,000, which Day's insurance carrier had paid to Wegeng for medical expenses. Flowers contends that under § 490.710, RSMo 1978, he is entitled to that credit. That section provides that an advance payment or partial payment of damages or of medical expenses, and other expenses not applicable here, predicated on possible tort liability, shall be deducted from any final judgment rendered in favor of an injured person. Flowers relies upon *Taylor v. Yellow Cab Co.*, 548 S.W.2d 528 (Mo. banc 1977). *Taylor* involved a suit brought by Taylor against Yellow Cab and the owner of another vehicle, which collided with the Yellow Cab. The payments in *Taylor* were made under a liability policy and were clearly predicated on possible tort liability. In contrast, the payments here were made under the medical pay provisions of Day's insurance policy, which covered Wegeng as a passenger in the Day automobile.

In *Webb v. State Farm Mutual Automobile Insurance Co.*, 479 S.W.2d 148, 154[6] (Mo.App.1972), this court stated:

As to the medical payments coverage, the insurer is not in the position of a tortfeasor, but is called upon to honor a constructual[sic] obligation which arises without regard to fault.

Thus, under *Webb*, an insurer in a policy providing medical payments coverage is not in the same position as a tortfeasor. The statute applies only to payment predicated upon possible tort liability. Payments under the contractual obligation to pay medical expenses are not made because of possi-

ble tort liability. For that reason, the statute has no application to medical payments made pursuant to contractual obligation.

For the failure to grant a continuance to Flowers and Day, the judgment is reversed, and this cause is remanded for a new trial on all claims.

All concur.