IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 17, 2024 Session

## JULIUS SUMMERROW v. CARA C. WELSH

**Appeal from the Circuit Court for Hamilton County**
No. 17-C-980        Kyle E. Hendrick, Judge

—————————————————————

**No. E2023-00772-COA-R3-CV**

—————————————————————

This is a personal injury action arising from an automobile accident on a road encircling a Chattanooga mall. The case was heard before a jury, which concluded that the defendant was not at fault. The plaintiff appeals. Having determined that there is material evidence to support the jury's verdict, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Charles G. Wright, Jr., Chattanooga, Tennessee, for the appellant, Julius Summerrow.

C. Scott Johnson, Drew H. Reynolds, Chattanooga, Tennessee, for the appellee, Cara C. Welsh, as Administrator Ad Litem for the Estate of Edward Varner.[1]

## OPINION

### FACTS AND PROCEDURAL HISTORY

On September 30, 2016, Julius Summerrow ("Plaintiff") was driving on Hamilton Place Boulevard in Chattanooga, Tennessee, when Edward Varner ("Defendant"), with his wife as passenger, began to pull out of a mall parking lot. Although the parties' vehicles came into contact, the parties dispute how the accident occurred and the force of the impact. Plaintiff claims to have been "struck by Defendant's automobile coming out of a parking

---

[1] Edward Varner, the defendant, passed away on March 3, 2019, while this case was pending in the trial court. By order entered March 16, 2020, Cara C. Welsh was substituted as the defendant for the decedent, having been granted letters of limited administration for cause of action only, which were entered in the Probate Division of the Chancery Court for Hamilton County under docket number 20-P-147. Neither party appeals the timeliness of the order of substitution.

lot," while Defendant claims that "[Plaintiff's] vehicle struck [Defendant's] vehicle." The photograph of the two vehicles reveals little, if any, property damage to either vehicle, and Plaintiff did not allege any property damage in the complaint.

Shortly thereafter, a police officer, Hunter Morgan ("Officer Morgan"), arrived at the accident scene. It is undisputed that Plaintiff did not report any injuries to Officer Morgan.

Plaintiff claims that the collision caused his shoulder to hit the "steel railing" inside his vehicle between the driver's door and the left rear door behind his seat. According to Plaintiff's testimony, he began to feel pain in his neck and left shoulder the morning after the accident. That night, he went to the emergency room, where he received an X-ray and was advised to seek treatment for his pain. In the years following the accident, Plaintiff sought treatment for his neck and shoulder from various medical professionals, including a chiropractor, Dr. Chancey Mason ("Dr. Mason"), and multiple orthopedic physicians, one being Dr. Peter Lund ("Dr. Lund"). He also underwent physical therapy.

On August 28, 2017, Plaintiff commenced this negligence action against Defendant in the Circuit Court for Hamilton County. In his complaint, Plaintiff alleged that Defendant operated his vehicle with negligent disregard for the safety of others and that Plaintiff "suffered personal injuries and medical expenses, chiropractic expenses, pain and suffering, loss of enjoyment of life, travel expenses for treatment, and permanent impairment" as a result of the collision. He further claimed that Defendant had violated Tennessee Code Annotated §§ 55-6-131 and 136, which violations constituted negligence per se. Plaintiff requested a jury trial and a judgment against Defendant in the amount of $200,000. In November 2017, Defendant filed his answer denying any liability.

The trial in this case took place on February 14 and 15, 2023, before a panel of twelve jurors. At trial, the jury heard live testimony from Plaintiff, Defendant's widow—Fran Varner ("Mrs. Varner")—who was riding in the car with Defendant on the day of the accident, and Officer Morgan. The jury also heard the deposition testimony of Dr. Mason and Dr. Lund, both of whom treated Plaintiff, as well as the deposition testimony of Dr. David West ("Dr. West"), an orthopedic surgeon who was called to testify as an expert witness by Defendant.

Plaintiff testified that he was "driving on the back side of Hamilton Place" when Defendant's vehicle pulled into his lane of travel and hit his passenger's side fender. Plaintiff testified that the impact from the collision caused him to move to the left and knock his shoulder into "the part of [his] car that separates the front seat from the back seat." Plaintiff testified that he had been following the speed limit and "keeping his eyes on the road[,]" but that he had not seen Defendant's vehicle and had not hit his brakes prior to the collision.

Mrs. Varner testified that it was Plaintiff's vehicle that "bumped" Defendant's vehicle. She stated that Defendant had begun to pull out of the parking lot after looking both ways and seeing that the road was clear, but that "out of nowhere, he saw [Plaintiff's] car coming" and came to a complete stop. After Defendant stopped, Mrs. Varner testified that "[Plaintiff's] vehicle touched [Defendant's] bumper."

Officer Morgan testified that, when he arrived at the scene of the accident, the parties' vehicles were corner to corner with "[Plaintiff's] front passenger's corner to [Defendant's] front driver's bumper." He also testified that he had noted only minor damage to the front bumpers of both vehicles.

With regard to his medical history prior to the accident, Plaintiff testified that he had previously suffered a rotator cuff injury to his right shoulder while working as a boilermaker. On cross-examination, Plaintiff initially testified that he had never experienced neck problems prior to the September 2016 accident, but on cross examination by defense counsel, Plaintiff admitted that he had previously dealt with neck problems "off and on."

Dr. Mason and Dr. Lund both testified that, during the course of Plaintiff's treatment, he had informed them that the pain in his neck and left shoulder began after the September 2016 automobile accident. While Dr. Lund was aware that Plaintiff had experienced problems with his right shoulder in the past, Plaintiff "attributed the symptoms in the left shoulder to the accident that he had been in." Based on the history provided to them by Plaintiff, both doctors stated that they believed Plaintiff's injuries to have been caused by that accident.[2] However, Dr. Mason testified that Plaintiff had not informed him that he had been experiencing neck pain prior to the accident, and when asked whether his opinion regarding the cause of Plaintiff's injuries could change if Plaintiff had previously experienced neck pain, Dr. Mason replied that "it could."

After reviewing Plaintiff's X-rays taken at the hospital the day after the accident, Dr. West testified that they showed "an underlying condition" of "pre-existing cervical spine degenerative disc and degenerative joint disease" that likely "would have nothing to do with this type of motor vehicle accident."

---

[2] Dr. Lund qualified that while he "rel[ies] on patients' histories" and "didn't necessarily have any reason to doubt [Plaintiff]" regarding the cause of his injuries, "patients in [Plaintiff's] age bracket can have impingement problems . . . that occur and cause pain with no history of an accident."

After hearing and considering the evidence and jury instructions, the jury returned a unanimous verdict finding that Defendant was not at fault.[3] Plaintiff appeals the jury's verdict.[4]

## ISSUES

Plaintiff presents one issue on appeal, which we rephrase as follows: Whether there is any material evidence to support the jury's finding that Defendant was not at fault.[5]

## STANDARD OF REVIEW

In civil actions decided by a jury, our standard of review is limited to the following:

> An appellate court shall only set aside findings of fact by a jury in a civil matter if there is no material evidence to support the jury's verdict. Tenn. R. App. P. 13(d); *Whaley v. Perkins*, 197 S.W.3d 665, 671 (Tenn. 2006). In determining whether there is material evidence to support a verdict, [the reviewing court] shall: "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000) (citing *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978)). "Appellate courts shall neither reweigh the evidence nor decide where the preponderance of the evidence lies." *Barnes*, 48 S.W.3d at 704. If there is any material evidence to support the verdict, we must affirm it; otherwise, the parties would be deprived of their constitutional right to trial by jury." *Crabtree Masonry Co.*, 575 S.W.2d at 5. As to issues involving questions of law, however, our standard of review is de novo with no presumption of correctness or deference to the legal conclusions made by the lower courts. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008); *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

*Creech v. Addington*, 281 S.W.3d 363, 372 (Tenn. 2009).

---

[3] The jury verdict form reads: "Do you find Edward Varner to be at fault? (Plaintiff has the burden of proof.)" The jury answered the question, "NO."

[4] Plaintiff filed a motion for a new trial in February of 2023. In principal part, the motion states: "The conclusion of the jury that Mr. Varner was not negligent is completely unsupported by the evidence." The trial court denied the motion in March of 2023.

[5] Defendant presents no additional issues.

- 4 -

Plaintiff contends that there was no material evidence to support the jury's finding that Defendant was not at fault because he claims that there is "substantial material evidence" to show that Defendant violated two statutory rules of the road—Tennessee Code Annotated §§ 55-8-131 and 136[6]—when he failed to yield to Plaintiff and entered Plaintiff's lane of travel, and that these infractions were "negligence per se and were the direct and proximate cause of [P]laintiff's alleged injuries and damages."

Defendant contends that there was "ample evidence from which a jury could conclude that [Defendant] was not at fault." Namely, Defendant argues that the jury could have concluded that Plaintiff was speeding at the time of the accident given that he was unable to stop in time to avoid the collision. Defendant further submits that Plaintiff cannot establish "a causal link between the accident and [Plaintiff's] alleged injuries" because there is "proof in the record demonstrating that [Plaintiff's] injuries were pre-existing, as opposed to being caused by the motor-vehicle accident at issue."

As noted above, in determining whether there is material evidence to support a verdict, we "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Barnes*, 48 S.W.3d at 704 (citations omitted).

We find it relevant that fault or "[n]egligence is not presumed from the mere fact of an accident or injury." *Armes by Armes v. Hulett*, 843 S.W.2d 427, 432 (Tenn. Ct. App. 1992) (citations omitted); *see also Howard v. Norwood*, No. M1999-00838-COA-R3-CV, at *5 (Tenn. Ct. App. May 25, 2000) (finding that the mere occurrence of an accident did not require the jury to find fault). Where there is conflicting evidence or reasonable minds may differ as to whether a defendant is negligent, the question of fault is for the jury to

---

[6] Tennessee Code Annotated § 55-8-131 reads: "The driver of a vehicle about to enter or cross a highway from a drive, private road, or private driveway shall yield the right-of-way to all vehicles approaching on the highway." Furthermore, Tennessee Code Annotated § 55-8-136 reads, in pertinent part:

> (b) Notwithstanding any speed limit or zone in effect at the time, or right-of-way rules that may be applicable, every driver of a vehicle shall exercise due care by operating the vehicle at a safe speed, by maintaining a safe lookout, by keeping the vehicle under proper control and by devoting full time and attention to operating the vehicle, under the existing circumstances as necessary in order to be able to see and to avoid endangering life, limb or property and to see and avoid colliding with any other vehicle or person, or any road sign, guard rail or any fixed object either legally using or legally parked or legally placed, upon any roadway, within or beside the roadway right-of-way including, but not limited to, any adjacent sidewalk, bicycle lane, shoulder or berm.

decide. *Hickman v. Jordan*, 87 S.W.3d 496, 499 (Tenn. Ct. App. 2001) (citing *Hale v. Rayburn*, 264 S.W.2d 230, 233 (Tenn. Ct. App. 1953)).

As discussed above, Defendant's widow, Mrs. Varner, testified that Defendant stopped to observe the flow of traffic prior to pulling out of the parking lot. Seeing that "the way was clear," Defendant began to pull out of the lot, but came to a complete stop when he saw Plaintiff's car emerge "out of nowhere." Mrs. Varner also testified that Plaintiff's vehicle "bumped" Defendant's vehicle after Defendant stopped. Thus, instead of finding Defendant at fault, the jury could have found that Plaintiff was negligent per se and at fault by failing to maintain a safe lookout and keeping his vehicle under proper control "to see and avoid colliding with any other vehicle." *See* Tenn. Code Ann. § 55-8-136(b).

It is also significant that Plaintiff was the only witness who testified that Defendant was at fault in causing the accident. Thus, the jury's verdict as to fault, if any, could be based on Plaintiff's credibility, or lack thereof, and there was evidence at trial that undermined Plaintiff's credibility.

For example, while Plaintiff insisted that his injuries were caused by the accident and initially testified that he did not have a pre-existing condition or prior injuries to his neck, he admitted on cross-examination that he had experienced neck pain "off and on" before the accident. Further, Dr. Mason's testimony indicated that Plaintiff had presented an incomplete medical history during the course of his treatment. Specifically, Dr. Mason testified that Plaintiff had reported no history of any prior problems with his neck or shoulders before the accident. Moreover, Defendant introduced evidence from Dr. West, whose review of Plaintiff's previous medical records revealed that Plaintiff had a pre-existing condition that would likely cause pain in the neck. Dr. West also opined that there was no objective evidence of any injury caused by the motor vehicle accident with Defendant.

To further challenge Plaintiff's credibility, Defendant introduced evidence showing that Plaintiff had denied that he was referred to Dr. Mason by his counsel, while Dr. Mason's records revealed that Plaintiff had been referred by his attorney.

Here, the jury's determination as to fault was dependent on its impression of Plaintiff's credibility and that of Mrs. Varner. Based upon the above evidence, the jury could conclude that Plaintiff was not entirely forthcoming or honest in his conversations with his doctors or in his testimony at trial. Thus, there was material evidence upon which the jury could discredit Plaintiff's testimony. *See Ferguson v. Middle Tenn. State Univ.*, 451 S.W.3d 375, 383 (Tenn. 2014) ("The jury can disregard the testimony of a witness it does not find to be credible.") (citations omitted). Conversely, there was no evidence to discredit Mrs. Varner's testimony that, immediately before the accident, Plaintiff came out

of nowhere and hit her husband's vehicle. Thus, there was material evidence to support the verdict that Defendant was not at fault.

As we have explained, the standard of appellate review when reviewing a jury verdict approved by a trial court is whether there is any material evidence to support the verdict. Tenn. R. App. P. 13(d). The record reveals that there is.

Having determined that there is material evidence upon which to conclude that Defendant was not at fault, we affirm the judgment of the trial court.[7]

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Julius Summerrow.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[7] Because we have affirmed the jury's finding that Defendant was not at fault, we need not reach the question of whether the accident was the cause in fact or proximate cause of Plaintiff's alleged injuries. *See Marla H. v. Knox Cnty.*, 361 S.W.3d 518, 539 (Tenn. Ct. App. 2011) (declining to reach the issue of causation when the plaintiffs failed to establish that the defendant had breached his duty of care).